UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| RACHEL J., § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 1:20-cv-1091-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## **INTRODUCTION**

Plaintiff Rachel J. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 14, 15. Plaintiff also filed a reply. *See* ECF No. 16. For the reasons set forth below, Plaintiff's motion (ECF No. 14) is **GRANTED**, the Commissioner's motion (ECF No. 15) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings.

## **BACKGROUND**

Plaintiff protectively filed her DIB application on July 11, 2017, alleging disability beginning December 16, 2016 (the disability onset date) due to back and neck injuries. Transcript ("Tr.") 158-59, 185. Plaintiff's application was denied initially on November 14, 2017, after which she requested an administrative hearing. Tr. 15. On September 16, 2019, Administrative Law

Judge Mary Mattimore (the "ALJ") presided over a hearing in Buffalo, New York. *Id*. Plaintiff appeared and testified, and was represented by Jeff Fields, a non-attorney representative. *Id*. Jay Steinbrenner, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on October 2, 2019, finding that Plaintiff was not disabled. Tr. 15-25. On June 15, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's October 2, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her October 2, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since December 16, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity, degenerative disc disease of the lumbar and cervical spine, status post anterior cervical discectomy and fusion, right shoulder rotator cuff repair status post decompression and arthroscopic rotator cuff repair surgery, left shoulder arthrosis and impingement. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)[1] because she can stand and/or walk for 2 hours in an eight-hour day but only for 20 minutes at any one time after which she requires the freedom to change position to a seated position while on task and at the workstation, can lift and/or carry up to ten pounds occasionally and less than ten pounds frequently. The claimant can occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl' the claimant can never climb ladders, ropes or scaffolds; the claimant can have no exposure to hazardous machines or unprotected heights; the claimant can occasionally push and/or pull bilaterally; the claimant can never reach overhead with her right dominant upper extremity; she can occasionally reach overhead with her left upper extremity; the claimant can occasionally reach to the front and sides with her right dominant upper extremity; the claimant can perform simple routine work and make simple workplace decisions but not a production rate pace (such as on an assembly line)..

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 15, 1972 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 16, 2016, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 15-24.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on December 16, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Act. Tr. 24.

## **ANALYSIS**

Plaintiff asserts two points of error, both of which challenge the ALJ's weighing of the medical opinion evidence. *See* ECF No. 14-1 at 17-30. First, Plaintiff argues that the ALJ failed to properly articulate and explain the medical opinions of record and, and instead, used her lay opinion to develop Plaintiff's RFC. *See id*. at 17-21. Plaintiff further argues that the ALJ did not properly evaluate Plaintiff's credibility factors. *See id*. at 21-22. Finally, Plaintiff argues that the ALJ failed to obtain updated medical consultative or treating opinions addressing Plaintiff's functional limitations after having right shoulder surgery, and her alleged deteriorating lumbar conditions. *See id*. at 23-30.

The Commissioner maintains that the ALJ considered the consistency of Plaintiff's subjective complaints with the medical evidence and the record as a whole and reasonably and

correctly found that Plaintiff's impairments were consistent with an RFC for sedentary work with the limitations noted by the ALJ. *See* ECF No. 15-1 at 5-18.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the opinion evidence and the entire record, the Court finds that Plaintiff's challenges have merit.

Plaintiff had two car accidents in December 2016 and in April 2017, during which she injured her shoulder. Tr. 20, 430, 1226, 1241. Plaintiff alleged that she was limited in nearly all physical activities and was unable to lift, stand, walk too far, sit too long, walk up stairs for too long, and reach. Tr. 20, 198-200. Plaintiff also testified that she was significantly limited in her daily activities and required assistance with tasks such as vacuuming, carrying laundry, grocery shopping, taking a bath, sitting for more than five minutes, or anything requiring reaching overhead. Tr. 20, 38-53.

From January 2017 to August 2018, Plaintiff received treatment from A. Marc Tetro, M.D. ("Dr. Tetro"), and other providers at Pinnacle Orthopedic & Spine Specialists ("Pinnacle"), for treatment and assessment of shoulder impingement syndrome, shoulder AC joint sprain, shoulder rotator cuff tear partial right, cervicalgia, and other conditions, including receiving injections and physical therapy. Tr. 647-715, 917-920, 939-942, 957-960, 998-10, 1226-1229, 1265-1268. In March 2018, Dr. Tetro performed right shoulder arthroscopic sub acromial decompression, distal

clavicle excision with debridement of labral tear combined with arthroscopic rotator cuff repair surgery. Tr. 1227.

In August 2018, Dr. Tetro noted that Plaintiff was "doing well" following her shoulder surgery, but she continued to have "some ongoing shoulder symptoms." Tr. 1268. He also noted that the expected recovery period from a rotator cuff repair was "lengthy" (up to 18 months). *Id*. Although he opined no restrictions related to Plaintiff's shoulder, he deferred to her treating spine physician with respect to her spine. *Id*.

From September 6, 2018 to November 29, 2018, Plaintiff treated with Ross Sherban, D.O. ("Dr. Sherban"), Rodrigo Castro, D.O. ("Dr. Castro"), and other providers at Sherban Orthopedics & Spine Surgery, PLLC ("Sherban Orthopaedics"), complaining of cervical, thoracic, and lumbar spine pain with radiculopathy to right upper and bilateral lower extremities. Tr. 1247. Plaintiff was status post anterior cervical discectomy and fusion ("ACDF") at C4-C7 performed in August 2017. *Id*. In October 2018, Plaintiff reported that the pain in her lumbar spine was worsening, and she continued to have pain in her cervical spine as well. Tr. 1248. Plaintiff stated she was unable to sit, stand or walk for prolonged periods of time without having severe pain, and she rated her pain as 10 out of 10 on average. *Id*. Multiple conservative measures had provided only minimal temporary relief. Tr. 1255-56. In November 2018, Dr. Sherban recommended surgical intervention of L5-S1 anterior LS interbody fusion with L5-S1 posterior instrumentation and decompression and possible repeat trigger point injections. Tr. 1260-62.

As noted above, the ALJ found that Plaintiff had the RFC to perform sedentary work with limitations. Tr. 19. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-

01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Thus, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [his] decision," because he is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

In reaching her RFC finding, the ALJ considered the following medical opinions:

- Reviewing consultant C. Krist, D.O. ("Dr. Krist"), who reviewed the medical evidence of record as of November 12, 2017, and opined that Plaintiff had the RFC for sedentary work with occasional postural restrictions. Tr. 80-82.

- Consultative examiner Nikita Dave, M.D. ("Dr. Dave"), who conducted a consultative internal medicine examination on September 7, 2017, only three weeks after Plaintiff's cervical spine fusion surgery. Tr. 716-20.'

- Occupational medicine specialist reviewer Andrea M. Carabello, M.D., M.P.H. ("Dr. Carabello"), who completed a review of Plaintiff's file for private disability insurance on July 11, 2017. Tr. 1216-17.

- Reviewing consultant Ramin Rabbani, M.D. ("Dr. Rabbani"), who reviewed the medical evidence of record on September 26, 2017, and found that Plaintiff could sit constantly; stand and walk one hour for six hours total; occasional reach; constant fine manipulation; constant simple and firm grasp; lift and carry frequently up to fifteen lbs.; occasional pull and push up to fifty pounds; constant balance; occasional stoop, bend, kneel, crouch, and crawl; and constant use lower extremities for foot control constant, see and hear. Tr. 1220-24.

- The July 2017 opinion of Plaintiff's long-term treating chiropractor Kevin M. Nightingale, D.C. ("Dr. Nightingale"). Tr. 1210.

The ALJ found Dr. Krist's opinion "persuasive;" Dr. Dave's opinion "not-persuasive;" Dr. Carabello's opinion "persuasive;" Dr. Rabbani's opinion "persuasive," and Dr. Nightingale's opinion "not persuasive." Tr. 21-22.

An RFC finding must be based on substantial evidence. When assessing highly specific RFC's, such specificity must be based on the record, not the ALJ's own surmise. *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where ALJ "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour" because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday"). An ALJ's RFC finding is only upheld "where the record is clear and, where there is some useful assessment of the claimant's limitations from a medical source." *Haymond v. Colvin*, 2014 WL 2048172, *7-8 (W.D.N.Y. 2014).

Without "some explanation" from the ALJ "as to the tether between [the] RFC and the non-stale medical opinions or statements from plaintiff, the RFC appears to be based upon [the ALJ's] lay analysis of plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018). Such is the case here. The ALJ failed to properly articulate and explain opinions of record and appeared to use lay opinion and selective reading in RFC findings. Tr. 19-22. Because the ALJ summarized the record and failed to provide sufficient discussion or rationale to support her RFC finding, the ALJ's rationale cannot be gleaned from her decision. *See Runfola v. Comm'r of Soc. Sec.*, No. 1:19-CV-0868 (WBC), 2020 WL 6566303, at *4 (W.D.N.Y. Nov. 9, 2020).

Effective for claims filed on or after March 27, 2017, the Social Security agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27,

9

2017). Here, Plaintiff filed her application on July 11, 2017 (Tr. 158-59), and therefore, the 2017 regulations are applicable to her claim. While the Commissioner no longer needs to assign particular evidentiary weight to the various treating sources in a medical record and their opinions, the ALJ must still consider certain factors when considering medical opinions. *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c); *see also Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017)). The new regulatory factors include: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors to consider), (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, *9 (S.D.N.Y. 2021).

Generally, an ALJ is required to explain her approach to the first two factors when considering a medical opinion but need not expound on the consideration given to the rest of the factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). At the most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, "pointing to specific evidence in the record supporting those findings." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 11 (W.D.N.Y. 2021). "An ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion." *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4–5 (N.D.N.Y. Feb. 22, 2021) (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). The ALJ here failed to meet this requirement.

First, the ALJ did not sufficiently explain how Dr. Carabello's and Dr. Rabbani's non-examining opinions are supported by, and consistent with, the record. Tr. 22. The ALJ merely

10

stated that the opinion(s) were consistent with the longitudinal record, except that Plaintiff had greater limitations. Tr. 22. This explanation is insufficient and frustrates meaningful court review. *See Runfola*, 2020 WL 6566303, at *4. Just as an ALJ is "required to explain what parts of [a medical] opinion she rejected and why," an ALJ is also required to explain what parts of the medical opinions he accepts and why. *Linda H. v. Comm'r of Soc. Sec.*, No. 19-CV-1244-LJV, 2021 WL 2075437, at *3 (W.D.N.Y. May 24, 2021). The ALJ did not do this. The ALJ's failure to explain her reasoning frustrates this Court's efforts to assess the validity of the ALJ's ultimate findings and "does not afford an adequate basis for meaningful judicial review." *Smith v. Comm'r of Soc. Sec.*, No. 19-CV-6194-LJV, 2020 WL 4904956, at *2 (W.D.N.Y. Aug. 19, 2020) (citations and internal quotation marks omitted).

With respect to the July 2017 opinion of treating chiropractor Dr. Nightingale, the ALJ found that Dr. Nightingale's restrictions were "vague" and failed to explain the meaning of "long periods" for sitting or standing. Tr. 22, 1210. However, the ALJ failed to discuss the consistency of Dr. Nightingale's opinion regarding Plaintiff's need for alternate position change and no lifting with the objective medical record, including the records of other treating providers and later objective medical evidence, as well as Plaintiff's reports and testimony. Tr. 720, 811-812, 1210, 1229-1231, 1240, 1247-1248, 1255, 1262-1265. For example, Dr. Nightingale's opinion was consistent with Dr. Castro's more restrictive lifting limits (Tr. 811-12), but the ALJ did not discuss this consistency, and did not mention any of the opinions from Sherban Orthopaedics regarding Plaintiff's functional limitations. Tr. 22. Court(s) have found error where the ALJ failed to consider separate treating opinions and consistency with each other and record as a whole. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 241, 248 (W.D.N.Y. 2019) (citing *Lopez v. Comm'r of Soc. Sec.*, 2014 WL 4700231, *15, (E.D.N.Y. 2014)).

Plaintiff also argues that the 2017 opinions from Dr. Krist, Dr. Dave, Dr. Nightingale, Dr. Carabello, Dr. Rabbani were incomplete and stale. *See* ECF No. 14-1 at 29-30. This argument likewise has merit. In 2018, after the above-noted opinions considered by the ALJ, Plaintiff underwent additional surgeries, her lumbar spine conditions worsened, and Dr. Sherban, her treating spine physician, determined that additional lumbar surgery was warranted. The evidence from Dr. Tetro and Dr. Sherban suggests that Plaintiff's lumbar and shoulder conditions were worse than found by the ALJ and warranted an updated opinion. Tr. 1248, 1260-62, 1268. These later findings indicate complex medical findings that do not warrant "common sense [lay] judgment" by the ALJ and indicate a need for updated medical functional assessment opinion after her 2018 shoulder surgery. *See Keener v. Comm'r of Soc. Sec.*, 2020 WL 755377, *4–6 (W.D.N.Y. Feb. 7, 2020) (citing *Robinson v. Berryhill*, No. 17-CV-0362, 2018 WL 4442267, *4 (W.D.N.Y. 2018) ("[A]n ALJ should not rely on 'stale' opinions–that is, opinions rendered before some significant development in the claimant's medical history.")). However, there is no medical opinion that opined on Plaintiff's functional limitations after surgery, or that considered these later findings. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016) (quotation and citation omitted).

Although the Commissioner argues that Plaintiff has failed to show that post-2018 evidence indicated a significant worsening of her shoulder and other conditions (*see* ECF No. 15-1 at 15), the Court cannot agree. Plaintiff suffered from persistent and worsening symptoms including lumbar spine pain that radiated to her lower extremities, and persistent cervical pain. Tr. 1255-56. Aggravating factors included prolonged sitting, standing, and walking; resting relieved

pain; and she tried multiple conservative modalities that failed. Tr. 1255, 1247-48, 1255-56. Plaintiff's reports and testimony also contradict the RFC findings, as she reported she was more limited in sitting/standing/walking, lifting/carrying, use of extremities, and she required rest periods due to exacerbation of pain, and medicinal side effects. Tr. 31-71. Additionally, this contradicts the ALJ's conclusions that Plaintiff's condition had improved. Tr. 23.

The Commissioner's argument that the ALJ properly considered the consistency of Plaintiff's subjective complaints with the medical evidence and record as a whole is similarly unpersuasive. *See* ECF No. 15-1 at 8. Contrary to the Commissioner's argument, the ALJ did not properly evaluate Plaintiff's credibility factors, such as medicinal side effects from pain medications that caused drowsiness, modification of activities like rest periods, multiple traumas, and assistance from others. Tr. 20-23. *See* SSR 16-3p. Where a claimant's impairments cause episodic symptoms, the ALJ must adequately account for that in the RFC. *See Merritt v. Comm'r of Soc. Sec.*, 2016 WL 6246436, *8 (W.D.N.Y. 2016). As previously discussed, the ALJ's discussion was notably lacking with respect to evidence suggesting that Plaintiff's worsening lumbar conditions warranted additional lumbar surgery.

Based on the foregoing, the Court remands this case so that the ALJ may address the deficiencies noted above. On remand, the ALJ. should thoroughly explain her findings in accordance with the regulations *See Martin v. Berryhill*, 16-cv-6184-FPG, 2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap in the record . . .") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) ). On remand, the Commissioner "should employ whichever of these methods are appropriate to fully develop the record as to [Plaintiff's] RFC." *Martin*, 2017 WL 1313837, at *4. In this case, the ALJ should develop the record as necessary to obtain opinions as to Plaintiff's functional limitations from treating and/or examining

sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

_/s/ Don D. Bush_
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE